# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                    Case No.  13-31138-PGH

                                          Chapter 11

EUGENIA L. CANNAVO,

    Debtor.

_____/

## DEBTOR, EUGENIA L. CANNAVO'S SECOND AMENDED PLAN OF REORGANIZATION

Respectfully submitted,

By:    /s/ Michael A. Kaufman
       Michael A. Kaufman, Esq.
       MICHAEL A. KAUFMAN, P.A.
       1655 Palm Beach Lakes Boulevard, Suite 1012
       West Palm Beach, FL  33401
       Florida Bar No. 0628042
       Telephone:  (561) 478-2878
       Facsimile:  (561) 584-5555
       Email: michael@mkaufmanpa.com

Dated: October 31, 2014

1

## ARTICLE I
### INTRODUCTION

EUGENIA L. CANNAVO, the Debtor in the bankruptcy case, hereby proposes the following plan (the "Plan") for the reorganization of the Debtor and the resolution of the outstanding Claims against and Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. Capitalized terms used herein shall have the meanings outlined in Article 2.1 of the plan and/or defined in this Plan. The Debtor is the proponents of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Interest until such time as the Debtor's Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Interests. The Debtor's Disclosure Statement is being simultaneously filed with the Bankruptcy Court. The Disclosure Statement contains, among other things (a) a discussion of the Debtor's history (b) a summary of significant events which have occurred to date in the Bankruptcy Case (c) a summary of the means of implementing and funding the Plan and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits attached thereto or referenced therein, have been approved by the Debtor for use in soliciting acceptances or rejections of the plan. **ALL HOLDERS OF CLAIMS IN THE DEBTOR WHICH ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 13 of the plan, the Debtor expressly reserve the right to alter, amend, modify, revoke or withdraw the plan, one or more times, prior to the plan's substantial consummation.

**THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.**

### ARTICLE 2
### DEFINED TERMS; RULES OF CONSTRUCTION

2.1    Defined Terms.

As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

2.1.1    "Administrative Expenses" means (a) any cost or expense of administration of the Bankruptcy Case that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or



before the applicable Administrative Expense Claims Bar Date, including (i) necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries or commissions for services rendered) incurred on or after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any post-petition tax year or period, and (v) compensation or reimbursement of expenses of Professional awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Superpriority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by Final Order of the Bankruptcy Court; provided, however, that when used in the plan, the term "Administrative Expense" shall not include any Priority Tax Claim, or unless otherwise expressly provided in the plan, any of the Claim in Classes 1 through 7.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any post-petition tax year or period).

    2.1.2  "Administrative Expense Claim" means any Claim for the payment of an Administrative Expense.

    2.1.3  "Administrative Expense Claims Bar Date" means the date established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court approved pleading for allowance of any Administrative Expense Claim.

    2.1.4  "Allowed Amount" means the dollar amount in which a Claim is allowed.

    2.1.5  "Allowed Claim" means (a) a Claim that has been allowed by a Final Order or (b) with respect to any Claim against, or Equity Interest in, a Debtor: (i) (a) proof of which, request for payment of which, or application for allowance of which, was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against the Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or (b) a Claim or Equity Interest that is allowed by the Debtor; (ii) listed as undisputed, liquidated, and non-contingent in the Schedules and as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; and (iii) in each instance, a Claim or Equity Interest as to which no objection to its allowance or motion to estimate for purposes of allowance has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or, as to which any such objection or



motion has been interposed, to the extent allowed by a Final Order. The term "Allowed," when used to modify a reference in this Plan to any Claim, Equity Interest, Class of Claims, or Class of Equity Interests, means a Claim or Equity Interest (or any Claim or Equity Interest in any Class) that is so allowed (*e.g.,* an "Allowed Secured Claim" is a Claim that has been allowed to the extent of the value, as determined by the Bankruptcy Court under Bankruptcy Code §506(a), of any interest in property of an Estate securing such Claim).

.    2.1.6   "Allowed Class/Claim" means an Allowed Claim in the particular Class described.

2.1.7   "Allowed Interest" means any Interest in the Debtor.

2.1.8   "Assets" means all assets of the Debtor of any nature whatsoever as of the Effective Date.

2.1.9   "Assumed Contracts" has the means ascribed to such term in Article 7 of the Plan.

2.1.10  "Ballot" means the Ballot accompanying the Disclosure Statement upon which Holders of Impaired Claim or Impaired Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

2.1.11  "Bankruptcy Case" means the case currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code which was commenced by the Debtor on the Petition February 11, 2014 with Case No.: 13-31138-PGH and is pending in the Southern District of Florida Bankruptcy Court.

2.1.12  "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. as in effect on the Petition Date, together with all amendments and modification thereto that were subsequently made applicable to the Bankruptcy Case.

2.1.13  "Bankruptcy Counsel" means Michael A. Kaufman P.A., 1655 Palm Beach Lakes Boulevard, Suite 1012, West Palm Beach, Florida 33401.

2.1.14  "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division or as the context requires any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

2.1.15  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075 and any Local Rules of the Bankruptcy Court applicable to the Chapter 11 Case, collectively.

2.1.16  "Bar Date" means the date set by the clerk at ECF 64. (i.e., August 6, 2014).

2.1.17  "Cash" means currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately available funds.



2.1.18 "<u>Causes of Action</u>" means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including (a) all statutory causes of action preserved for the Consolidated Estate under Bankruptcy Code §§510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that the Debtor or the Estate may have against any Person. Failure to list an avoidance action in this Plan does not constitute the Debtor's or the Estate's waiver or release of that avoidance action and (b) any and all other claims or rights of any value whatsoever at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement or in Article 8.7 of the Plan. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgment, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness or liabilities released or waived by order of the Bankruptcy Court or in writing by the Debtor. A Cause of action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Causes of Action with specificity in the plan or in the Disclosure Statement; nor shall the Debtor or the Reorganized Debtor be estopped or precluded under any theory from pursuing the Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

2.1.19 "<u>Claim</u>" means a claim against the Debtor or its property as defined in Bankruptcy Code §101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.1.20 "<u>Class</u>" means a category of Claims or Interests classified together as described in Article 4 of the Plan.

2.1.21 "<u>Clerk</u>" means the Clerk of the Bankruptcy Court.

2.1.22 "<u>Clerk's Office</u>" means the Office of the Clerk of the Bankruptcy Court located at 1515 N. Flagler Drive, West Palm Beach, Florida.

2.1.23 "<u>Collateral</u>" means any property or interest in property of an Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not being subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

2.1.24 "<u>Confirmation</u>" or "<u>Confirmation of the Plan</u>" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

2.1.25 "<u>Confirmation Date</u>" means the date on which the confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).



2.1.26 "Confirmation Hearing" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

2.1.27 "Confirmation Order" means the order of the Bankruptcy Court in the Bankruptcy Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code as such order may be amended, modified or supplemented, which order (including as amended, modified or supplemented) shall be in form and substance satisfactory to the Debtor.

2.1.271 "Conversion Date" means the date the case was converted from a chapter 13 to a chapter 11. (i.e. April 3, 2014).

2.1.28 "Creditor" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, and Priority Claims.

2.1.29 "Cure Claim" has the meaning ascribed to such term in Article 7 of the Plan.

2.1.30 "Debt" has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

2.1.31 "Debtor" means Eugenia L. Cannavo.

2.1.32 "Debtor in Possession" means Eugenia L. Cannavo, Debtor in Possession in the Bankruptcy Case.

2.1.32.1 "Deficiency Claim" means any Claim that a secured creditor has after its claim has been bifurcated into a secured or unsecured claim.  The Deficiency Claim will be the unsecured portion of the claim after it has been bifurcated and the deficiency portion will be based on the allowed Unsecured Claim.

2.1.33 "Deposits" means the forfeitable portion of the deposits paid by unit purchasers at the time of the execution of the Debtor's standard purchase agreement to the extent that the deposits remain with an Escrow Agent on the Effective Date of the Plan.

2.1.34 "Disallowed Claim" means any Claim which has been disallowed by an order of the Bankruptcy Court which order has not been stayed pending appeal.

2.1.35 "Disclosure Statement" means the Disclosure Statement for Debtor's Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code dated as of October 31, 2014, in including all Exhibits attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

6



2.1.36 "<u>Disputed Claim</u>" with respect to Claims or Equity Interests, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtor or any other party-in-interest has (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

2.1.37 "<u>Distribution</u>" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

2.1.38 "<u>Docket</u>" means the docket or dockets in the Bankruptcy Case maintained by the Clerk.

2.1.39 "<u>Effective Date</u>" means the first Business Day that is 30 days after the Confirmation Date and on which (a) no stay of the Confirmation Order is in effect and (b) all conditions to effectiveness set forth in Section 10.02 of this Plan have been satisfied or waived in accordance with this Plan.

2.1.40 "<u>Equity Interest</u>" means any equity interest in the Debtor represented by any class or series of common or preferred stock issued before the Effective Date, and any warrants, options, or rights to purchase any common or preferred stock.

2.1.41 "<u>Estate</u>" means the estate for the Debtor created in the Chapter 11 Case under Bankruptcy Code §541.

2.1.42 "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Debtor; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal, writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

2.1.43 "<u>General Unsecured Claim</u>" means any Claim against the Debtor existing as of the Petition Date not secured by an interest in property of the Estate, other than a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Claim, or an Equity Related Claim. The definition does not include the Deficiency Claim set forth in 2.1.32.1.

2.1.44 "<u>Governmental Unit</u>" means a governmental unit as such term is defined in Section 101(27) of the Bankruptcy Code.



2.1.45 "<u>Holder</u>" means (a) as to any Claim (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been file d with respect to such Claim, the owner or holder of such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Interest, the record owner or holder of such Interest as shown on the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court.

2.1.46 "<u>Impaired</u>" refers to any Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

2.1.47 "<u>Interests</u>" means any and all membership interests in the Debtor.

2.1.48 "<u>Liabilities</u>" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any Affiliate, Subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any Affiliate, Subsidiary, predecessor or assign thereof, any assets of the Debtor (including the Assets), the business or operations of the Debtor, the Bankruptcy Case, or the plan, including any and all liabilities, obligations judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligation of the Debtor or the Reorganized Debtor expressly set forth in the Plan.

2.1.49 "<u>Lien</u>" means, with respect to any Asset or Property, any mortgage, pledge, security interest, lien right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

2.1.50 "<u>Local Rules</u>" means the Local Rules of the United States Bankruptcy Court for the Southern District of Florida, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

2.1.51 "<u>Person</u>" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

8



2.1.52 "<u>Petition Date</u>" means September 3, 2013 the date on which the Debtor commenced the Bankruptcy Case by filing its voluntary petition under Chapter 13 of the Bankruptcy Code.

2.1.53 "<u>Plan</u>" means the Debtor's Amended Plan of Reorganization under Chapter 11 of the United States Bankruptcy code dated October, 2014, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

2.1.54 "<u>Plan Documents</u>" means all documents that aid in effectuating the Plan including the Exhibits to the Plan, which documents shall be filed with the Bankruptcy Court in accordance with Article 14.20.

2.1.55 "<u>Postpetition</u>" means arising or accruing on or after the Petition Date and before the Effective Date.

2.1.56 "<u>Prepetition</u>" means arising or accruing prior to the Petition Date.

2.1.57 "<u>Priority Claim</u>" means a Claim that is entitled to a priority under Bankruptcy Code § 507(a) other than Priority Tax Claim or Administrative Expense Claims.

2.1.58 "<u>Professional</u>" means any professional employed in the Bankruptcy Case with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.59 "<u>Proof of Claim</u>" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rule 3001, 3002, or 3003.

2.1.60 "<u>Property</u>" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising and wherever located, and any interest of any kind therein.

2.1.61 "<u>Pro Rata</u>" means with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claim in such Class, all determined as of the applicable Distribution Date.

2.1.62 "<u>Rejected Contracts</u>" has the meaning ascribed to such term in Article 7 of the Plan.

2.1.63 "<u>Reorganized Debtor</u>" means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

2.1.64 "<u>Schedules</u>" means collectively, the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor in the Bankruptcy Case.  Debtor reserves the



right to amend or supplement its schedules of assets and liabilities and the statement of financial affairs from time to time.

2.1.65 "<u>Secured Claim</u>" means any Claim (a) listed in the Schedules as a liquidated, noncontingent, and undisputed secured Claim, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code §506(a), or, if the Claim is subject to setoff under Bankruptcy Code §553, net of the setoff.

2.1.66 "<u>Secured Creditor</u>" means any Creditor holding a Secured Claim.

2.1.67 "<u>Superpriority Claim</u>" means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claim granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

2.1.68 "<u>Unimpaired</u>" refers to a Claim that is not Impaired.

2.1.69 "<u>United States</u>" means the United States of America.

2.1.70 "<u>United States Trustee</u>" means the Office of the United States Trustee for the Southern District of Florida.

2.1.71 "<u>Unsecured Claim</u>" means any Claim which is not an Administrative Expense Claim, Priority Claim, or Secured Claim including (a) any Claim arising from the rejection of an executor contract or unexpired lease under Section 365 of the Bankruptcy code (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

2.1.72 "<u>Unsecured Creditor</u>" means any Creditor holding an Unsecured Claim.

2.1.73 "<u>Voting Deadline</u>" means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order, unless such date is extended by order of the Bankruptcy Court or agreement of the Debtor.

2.1.74 "<u>Voting Instructions</u>" means the instructions for voting on the plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

2.2    Capitalized Terms

Any capitalized term used in the Plan that is not defined in the Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the



Bankruptcy Code or the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

## ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS
## AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified in the Plan. The treatment accorded to Administrative Expense Claims is set forth below in this Article 3.

3.1     Unclassified Claims. As provided in Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with this Plan and under Bankruptcy Code §1129(a)(9)(A).

3.2     Allowed Administrative Claims

3.2.1     Each Allowed Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) any date the Bankruptcy Court may fix, or as soon after that date as practicable; (c) 30 days after the Claim is Allowed; and (d) any date on which the holder of the Claim and the Debtor agreed in writing.

3.2.2     Requests for Payment. All requests for payment of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) must be served on Reorganized Debtor's counsel, and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Preserved Ordinary Course Administrative Claim or Professional Fee Claim) that fails to file and serve its request by the Administrative Claims Bar Date will be forever barred from asserting its Administrative Claim against the Debtor or Reorganized Debtor.

3.3     Preserved Ordinary Course Administrative Claims. Each Allowed Preserved Ordinary Course Administrative Claim will be paid in full in Cash at Reorganized Debtor's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized Debtor's business. Payments will be made without further action by the holder of the Preserved Ordinary Course Administrative Claim.



3.4     Allowed Priority Tax Claims. Any Allowed Priority Tax Claim will be paid in full in Cash on the later of the Effective Date (or as soon after that date as practicable) and 30 days after the Claim is Allowed, but the Debtor or Reorganized Debtor may elect to pay any Allowed Priority Tax Claim through regular installment payments in Cash of a total value, as of the Effective Date, equal to the Allowed amount of the Claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored General Unsecured Claim provided for by this Plan. If the Debtor or Reorganized Debtor so elect, the installment payments will be made in equal quarterly installments of principal plus simple interest on the unpaid portion of the Allowed Priority Tax Claim accruing from the Effective Date at the rate of six percent per year. The first payment will be made on the latest of: (a) the Effective Date, or as soon after that date as practicable; (b) 30 days after the Claim is Allowed, or as soon after that date as practicable; and (c) another date on which the holder of the Claim and the Debtor or Reorganized Debtor agree.  Debtor and Reorganized Debtor, as the case may be retains the right to prepay any Allowed Priority Tax Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without premium or penalty.

3.5     Professional Fee Claims. Each Allowed Professional Fee Claim will be paid in full in Cash: (a) no later than three days after the Professional Fee Claim is Allowed; (b) on any other terms the holder of an Allowed Professional Fee Claim and the Debtor or Reorganized Debtor may agree; or (c) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on Reorganized Debtor its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within 60 days after the Effective Date.

3.6     Post-Confirmation Date Professional Fees. All claims of Professionals for services rendered or expenses incurred after the Confirmation Date in connection with the Chapter 11 Case and this Plan including those relating to consummation of this Plan, any appeal of the Confirmation Order, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Preserved Litigation Claims, and the resolution of Disputed Claims, will be paid by Reorganized Debtor on receipt of an invoice, or on other terms on which Reorganized Debtor and the Professional agree, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized Debtor has ten days after receiving a Professional's invoice to object to any item contained in that invoice. If Reorganized Debtor and any Professional cannot agree on the amount of post-Confirmation Date fees and expenses to be paid to the Professional, the Bankruptcy Court will determine that amount.

3.7     Unclassified Claims. As provided in Bankruptcy Code §1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on this Plan but, rather, are treated separately in accordance with Sections 2.1.1 and 2.1.5.7 of this Plan and under Bankruptcy Code §1129(a)(9)(A).

**ARTICLE 4**



## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Pursuant to Section 1112 of the Bankruptcy Code, set forth below is a designation of Classes of Claim and Interests. A Claim or Interest (a) is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include Claims against the Debtor that qualify within the description that Class. For purposes of the Plan, the Claims and Interests are classified as follows:

4.1    Class 1:  Priority Claims

Class 1 consists of all Priority Claims.

This class is unimpaired

4.2    Class 2:

Secured Claim of Wells Fargo Bank, N.A. (herein referred as "Bank 1") having the address of Attn: Bankruptcy Department MAC#T7416-023, 4101 Wiseman Blvd, San Antonio TX 78251.

Property located at 700 Ocean Royale Way, Apt. 903, Juno Beach, Florida 33408.

Class 2 is unimpaired

4.3    Class 3: Intentionally Left Blank

4.4    Class 4:  Intentionally Left Blank

4.5    Class 5:  Internationally left Blank

4.5    Class 6:  Internationally left Blank

4.6    Class 7:  Intentionally Left Blank

4.7    Class 8: Intentionally Left Blank

4.8    Class 9: General Unsecured Claims.

Class 9 is impaired

## ARTICLE 5

13



## TREATMENT OF CLASSFIFIED CLAIMS, INTERESTS
## AND EQUITY INTERESTS

Claims, Interests and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims, Holders of Allowed Interests and Holders of Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Interests.

5.1     Unclassified Claims

Holders of Allowed Administrative Expense Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2     Class 1: Priority Claims

Class 1 consists of all Priority Claims. Each Holder of an Allowed Priority Claim shall be paid (a) on the Effective Date, an amount, in Cash by the Reorganized Debtor equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) as otherwise agreed to by the Debtor and the Holder of an Allowed Priority Claim, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

The Debtor is not aware of any Class 1 Members as of the date of this filing.

Class 1 is Unimpaired.

5.3     Class 2: **Secured Claim of Wells Fargo Bank, N.A. (herein referred as "Bank 1") having the address of Attn: Bankruptcy Department MAC#T7416-023, 4101 Wiseman Blvd, San Antonio TX 78251.**

**Property located at 700 Ocean Royale Way, Apt. 903, Juno Beach, Florida 33408.**

having the legal description:

Condominium Unit N0. S-903, South Building, Ocean Royal Condominium, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 11780, at Page 794, and all amendments thereto, of the public Records of Palm Beach County, Florida;

and the parcel ID 38-43-44-21-15-205-0120. This property is a homestead property. The Holder of the Allowed Class 2 Secured Claim of Bank 1 shall be paid in full. There is a Final Judgment at Official Records Book 26012, at Page 1954 of the public Records of Palm Beach County Florida, and the Debtor will pay the amount of the Final Judgment plus appropriate interest. The Debtor upon Confirmation will make the actual monthly mortgage payment and the arrearage of the Allowed secured claim over 60 months. The Debtor is allowed to prepay any amount at any



time without penalty and seek a discharge. Class 2 is being objected to, as the proof of claim (Claim No. 8) includes arrearages that were also included in the Final Judgment. An Objection to Claim to Wells Fargo Bank, N.A. was filed on October 29, 2014, at Docket Entry 111, for which there is a Hearing on November 25, 2014, which was noticed at Docket Entry 112. The Debtor does not waive any right to reopen the Final Judgment pursuant to Florida law. The Debtor will be making a balloon payment of approximately $80,000.00 in the final month to account for remaining arrearages, to be provided by the Debtor's spouse.

Class 2 is impaired.

5.4     Class 3: Intentionally left Blank

5.5     Class 4: Intentionally left Blank

5.6     Class 5: Intentionally left blank

5.7     Class 6: Intentionally left blank

5.8     Class 7: Intentionally left blank

5.9     Class 8: Intentionally Left Blank.

5.10

Class 9 consists of all Unsecured Claims against the Debtor not otherwise classified in the Plan. The Holders of the allowed Unsecured Claim in Class 9 shall receive 30% of all Allowed Claims in the amount of $38,987.42 and will be paid over prorated share over 60 months in the amount of $649.79. These creditors also include, but not limited to Claim No. 1 for $5,247.98 of the Internal Revenue Service for the unsecured portion of its claim, Claim No. 2 for $2,194.60 of Wells Fargo Bank, N.A., Claim No. 3 for $1,366.37 of Quantum3 Group LLC as agent for Comenity Capital Bank, Claim No. 4 for $9,972.95 of American Express Bank FSB, Claim No. 5 for $7,997.32 of Portfolio Recovery Associates, LLC (disputed claim)[1], Claim No. 6 for $132.39 of GE Capital Retail Bank, Claim No. 7 for $1,211.91 of GE Capital Retail Bank, Claim No. 9 for $9,972.95 of American Express Bank, FSB (disputed claim)[2]. These creditors also include those that have not filed a proof of claim but are listed on Debtor's Schedule F, including

---

[1] This claim is disputed as duplicative, and is not being included in the Claim Total.

[2] This claim is disputed as duplicative, and is not being included in the Claim Total.



American Express for a Costco Credit Card for the account number ending 1003 for $31,664.87, Bank of America for a Credit Card for the account number ending 3771 for $737.00, Bank of America for a Credit Card for the account number ending 8785 for $953.00, Bank of America for a Credit Card for the account number ending 1142 for $17,966.00, Chase Bank USA, NA for a Credit Card for the account number ending 0840 for $22,168.00 (disputed claim)[3], Chase Bank USA, NA for a Judgment in Westchester County, NY for $23,340.00, Citibank, N.A. for a Judgment in Westchester County, NY for $27,965.00, CloseMyTimeShare.com for a Time Share Deficiency for the account number ending 2928 for $5,641.44 (disputed claim)[4], FIA CSNA for a Credit Card for the account number ending 4181 for $2,832.00, First Revenue Assurance for $780.00, Mark L. Nichter, P.C. for Collection for Greenwich Hospital for account number ending 3804 for $1,400.00, and WF Fin Bank for a Credit Card for the account number ending 3666 for $2,194.00. These are only claims that filed a proof of claim and allowed, all others will be barred for collection from the Debtor forever, unless the Debtor has not listed the claim as disputed, contingent, or unliquidated. The Debtor can prepay without penalty. The Debtor reserves the right to increase distribution if deemed necessary for voting purposes.

The Debtor filed an Amended Schedule F on October 27, 2014, at Docket Entry 110. The Debtor filed a Motion to Approve Amended Schedules on October 29, 2014, at Docket Entry 113, for which there is a Hearing on November 25, 2014, which was noticed at Docket Entry 114.

Class 9 is impaired.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

6.1    Each Impaired Class Entitled to Vote Separately.

Except as otherwise provided in Article 6.4 or in any enforceable intercreditor contract or agreement, the Holders of Claims or Interests in each Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan.

6.2    Acceptance by Impaired Classes.

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) or more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the

---

[3] This claim is disputed as duplicative, and is not being included in the Claim Total.

[4] This claim is disputed, as the Debtor has provided a deed-in-lieu to Creditor, which would satisfy any claim the Creditor has against the Debtor, and is not being included in the Claim Total.



Bankruptcy Code, an Impaired Class of Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

6.3     Presumed Acceptance of Plan by Unimpaired Classes.

Class 1 is Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan, and thus, are not entitled to vote on the Plan. Accordingly, voted of Holders of Claims in such Classes are not being solicited by the Debtor. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor or the Reorganized Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4     Impairment Controversies.

If a controversy arises as to whether any Claim or Interest, or any Class of Claims or Class of Interests, is Impaired under the Plan, such Claim, Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Interest or a particular Class of Claims or Class of Interests, under the Plan.

### ARTICLE 7
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumption or Rejection of Executory Contracts and Unexpired Leases. All executory contracts and unexpired leases between the Debtor and any Person are dealt with as follows:

7.1.1   Assumption of Executory Contracts and Unexpired Leases. All      executory contracts and unexpired leases set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court as part of this Plan will be deemed rejected by Debtor.

7.1.2   Rejection of Executory Contracts and Unexpired Leases. All      executory contracts and unexpired leases either (i) set forth on the schedule of rejected executory contracts and unexpired leases filed with the Bankruptcy Court or (ii) existing but not listed herein will be deemed rejected as of the Effective Date or August 1, 2010, whichever is later, except for any executory contract or unexpired lease that has been assumed or rejected in accordance with a Final Order entered on or before the Confirmation Date.



7.2     Approval of Assumption or Rejection.  Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code §365 of the assumption or assumption and assignment of the executory contracts and unexpired leases assumed or assumed and assigned under this Plan or otherwise during the Chapter 11 Case; and (b) the approval under Bankruptcy Code §365 of the rejection of the executory contracts and unexpired leases rejected under this Plan or otherwise during the Chapter 11 Case. Notwithstanding anything contained in this Section 7.2 to the contrary, the Debtor retains the right to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease to this Plan, thus changing the treatment of the contract or lease under this Plan, at any time within 30 days after the Effective Date.

7.3     Cure of Defaults.   On the Effective Date or as soon after that date as practicable, Reorganized Debtor will cure any defaults under any executory contract or unexpired lease assumed or assumed and assigned under this Plan. Reorganized Debtor will not, and need not as a condition to assuming or assuming and assigning any executory contract or unexpired lease under this Plan, Cure any default that need not be cured in accordance with Bankruptcy Code §365(b).

7.4     Rejection Claims Bar Date.   All Rejection Claims arising from the rejection of any executory contract or unexpired lease under this Plan are required to be filed with the Bankruptcy Court no later than the Rejection Claims Bar Date. Any such Claim not filed within that time will be forever barred. With respect to any executory contract or unexpired lease rejected by the Debtor before the Confirmation Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If such an order did not contain such a deadline, the deadline for filing a Rejection Claim arising from that rejection is the Rejection Claims Bar Date.


# ARTICLE 8
## MEANS OF IMPEMENTATION OF THE PLAN

8.1     General Overview of the Means of Funding Plan Distributions.

    The general structure of the reorganization effort in the Reorganization Case involves a stand-alone plan of reorganization pursuant to which the Debtor shall continue to operate post-confirmation as the Reorganized Debtor.

8.2     Section 1146 Exemption.

    Pursuant to Section 1146(a) of the Bankruptcy code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under Section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.

8.3     Effectuating Documents; Further Transactions.

18



The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, deeds, releases, mortgages and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

8.4     Preservation of Causes of Action.

Except as otherwise provided in the Plan or the Confirmation Order or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtor will retain for their own benefit and may pursue, not pursue, settle, release, or enforce, in its sole and absolute discretion, all claims, rights or Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, including Causes of Action arising under Chapter 5 of the Bankruptcy Code. The Debtor is not currently in a position to express an opinion on the merits of any Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. In the event of recovery by the Debtor or the Reorganized Debtor, the funds will be deposited into Debtor's bank account and will be utilized to pay ongoing operating expenses.

8.5     Retention of Jurisdiction.

The Plan provides for the retention of jurisdiction by the Bankruptcy Court following the Effective Date.

## ARTICLE 9
## DETERMINATION OF CLAIMS

9.1     Determination of Claims.

9.1.1   **Objection to Claims**. Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been allowed before the Effective Date, Reorganized Debtor may object to the allowance of any Claim against the Debtor or seek estimation of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on Reorganized Debtor's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

9.1.2   **Distributions on Allowance or Disallowance of Disputed Claims.** No distributions will be made to any Holder of a Claim unless and until the Claim becomes an Allowed Claim. If a Claim is not an Allowed Claim as of the Effective Date, distributions on account of that Claim will commence only when the Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in this Plan. If a Disputed Claim becomes an Allowed Claim, Reorganized Debtor will make a distribution in accordance with the terms of this Plan applicable to Claims of the Class in which that Claim resides.

9.1.3   **Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is disallowed, the Claim will be treated as a Disputed Claim for all purposes under this Plan. The



holder of a Contingent Claim will be entitled to a distribution under this Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement or contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code §509.

9.2    *De Minimus* Distributions.

No distributions of less than $10 will be made on account of any Claim or Equity Interest. If the holder of an Allowed Claim or Allowed Equity Interest does not receive a distribution owing to the provisions of this Section 14.16 on the Effective Date or any subsequent date, the Allowed Claim or Allowed Equity Interest remains eligible for distributions on the first date set for distributions when such distribution exceeds $10.

9.3    Unclaimed Distributions.

9.3.1    If the Holder of an Allowed Unsecured Claim failed to negotiate a check issued to such Holder within thirty (30) days of the date such check was issued, then the Debtor shall provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim. All unclaimed funds will reinvest in the Debtor.

9.3.2    If a Cash distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Debtor to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor as to such distribution within thirty (30) days of the date such distribution was made, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such distribution, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

9.3.3    Any unclaimed Cash distribution as described in Articles 9.4.1 and 9.4.2 above shall become the property of the Debtor for further distribution under the Plan.

9.4    Transfer of the Claim.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of such transfer

9.5    Compliance with Tax Requirements.



In connection with the Plan, the Debtor, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

## ARTICLE 10
## CONDITIONS PRECEDENT

10.1    Condition Precedent to Confirmation of the Plan.

The following is a condition precedent to Confirmation of the Plan:

10.1.1 The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

10.2    Conditions Precedent to the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived by the Debtor in accordance with Article 10.3 of the Plan:

10.2.1 The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor on the Docket of the Bankruptcy Case, and no stay of the Confirmation Order shall be in effect.

10.2.2 The entry and effectiveness of all necessary orders by the Bankruptcy Court and any appellate court exercising jurisdiction over the Bankruptcy Case.

10.3    Waiver of Conditions Precedent to the Effective Date.

The conditions precedent set forth in Article 10.2 (with the exception of the entry of the Confirmation Order) of the Plan may be waived by the Debtor unless the Bankruptcy Court has entered an order prohibiting any such waiver.

## ARTICLE 11
## DISCHARGE AND GENERAL INJUNCTION

11.1    Revesting of Property of the Estate in the Reorganized Debtor.

On the Effective Date, except as otherwise expressly provided in the Plan, including as to Lien preservation for Class 2, all Property of the Estate shall revest in the Reorganized Debtor free and clear of any and all Liens, Debts, obligations, Claims, Liabilities, and all other interests of every kind and nature, and the Confirmation Order shall so provide.

11.2    Discharge of Claims and Termination of Equity Interests.



Except as otherwise expressly provided in the Plan or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and equity interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and equity interest of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1131(d)5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

11.3    United States Trustee's Fees.

The Reorganized Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date.    The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

11.4    General Injunction.

**Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interest, other than actions brought to enforce any rights or obligations under the Plan: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor or their respective Property, any claim against debtor's counsel relating to the plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor or its respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor, the Reorganized Debtor, or their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Reorganized Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order, or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or Reorganized Debtor under the Plan**



**and the documents executed in connection therewith. The Debtor and the Reorganized Debtor shall have the right to independently seek enforcement of this general injunction provision.  This general injunction provision is an integral part of the Plan and is essential to its implementation.  This provision is cumulative with the Debtor's other legal rights and remedies**.

Notwithstanding the foregoing, the Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

11.5    Term of Certain Injunctions and Automatic Stay.

Except as otherwise ordered by this Court, all injunctions or automatic stays provided for in the Reorganization Case pursuant to section 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

11.6    No Liability for Tax Claims.

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtor or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

**ARTICLE 12**
**RETENTION OF JURISDICTION**

12.1    Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain as much jurisdiction over the Chapter 11 Cases after the Effective Date as legally permissible including jurisdiction to:

12.1.1 Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

12.1.2 Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or this Plan;

12.1.3 Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a

23



party and to hear, determine and, if necessary, liquidate any Claims arising from, or Cure related to, assumption or rejection;

12.1.4 Ensure that distributions required under this Plan are accomplished in accordance with this Plan;

12.1.5 Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;

12.1.6 Enter any necessary or appropriate orders to implement or consummate this Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan or the Disclosure Statement;

12.1.7 Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan, or any Person's obligations incurred in connection with this Plan;

12.1.8 Hear and determine any motion or application to modify this Plan before or after the Effective Date under Bankruptcy Code §1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with this Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code;

12.1.9 Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of this Plan;

12.1.10 Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.1.11 Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with this Plan, the Disclosure Statement or the Confirmation Order;

12.1.12 Issue a final decree and enter an order closing the Chapter 11 Case; and

12.1.13 Adjudicate the Disputed Claims, the Avoidance Actions, and the Preserved Litigation Claims and any other cause of action or claims of the Debtor or the Estate.



## ARTICLE 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

13.1    Modification of Plan.

13.1.1 The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

13.1.2 After the entry of the Confirmation Order, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interest under the Plan.

13.1.3 After the Confirmation Date and before substantial consummation of the Plan, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan in a way that materially adversely affects the interests, rights or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims or by at least two-thirds in amount of Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtor or the Reorganized Debtor (as the case may be) complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

13.1.4 Notwithstanding anything to the contrary contained in this Article 13.1 or elsewhere in the Plan, the plan may not be altered, amended or modified without the written consent of the Debtor or the Reorganized Debtor (as the case may be).

13.2    Confirmation over Objections.

In the event any Impaired Class of Claims or Equity Interest votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 14.2, the Debtor hereby requests, and shall be allowed, to modify the terms of the plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtor may make such modifications or amendments to the Plan and such modification or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation hearing.  No such modifications shall require any



resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the plan to the contrary, the Debtor reserves any and all rights it may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.



## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1    No Admissions.

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

14.2    Revocation or Withdrawal of the Plan.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

14.3    Standard for Approval of the Bankruptcy Court.

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 Debtor in Possession.

14.4    Further Assurances.

Each of the Debtor and the Reorganized Debtor agree, and is hereby authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

14.5    Headings.

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

14.6    Notices.

All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor or the Reorganized Debtor c/o Michael A. Kaufman, Esq., Michael A. Kaufman, P.A., 1655 Palm Beach Lakes Boulevard, Suite 1012, West Palm Beach, Florida 33401.



14.7    Governing Law.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

14.8    Limitation on Allowance.

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

14.9    Estimated Claims.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be allowed in an amount greater than the estimated amount.

14.10    Consent to Jurisdiction.

Upon any default under the Plan, the Debtor and the Reorganized Debtor consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for al proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to or arising under this Bankruptcy Case.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

14.11    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Reorganized Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim that the Debtor may have against the Holder of such Claim.



14.12   Successors and Assigns.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Equity.

14.3   No Interest.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose.

14.14   Modification of Payment Terms.

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

14.15   Entire Agreement.

The Plan sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

14.16   Severability of Plan Provisions.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable.

14.17   Confirmation Order and Plan Control.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor or the Reorganized Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Plan



controls over the Disclosure Statement and any such agreement, and the Confirmation Order (and any other final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan.

14.18    Computation of Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

14.19    Substantial Consummation.

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Reorganized Debtor of the distributions described in the Plan.

14.20    Plan Documents.

The Plan Documents (if any) shall be filed with the Bankruptcy Court at least five (5) days prior to the Voting Deadline; provided, however, that the Debtor may amend the Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the Plan Documents may be inspected in the Clerk's Office during normal business hours or may be obtained from the Debtor's counsel.

Dated: October 31, 2014
      West Palm Beach, Florida            Eugenia L. Cannavo